Brockenbrough, J.
The deed in this case was not executed under the authority of the statute which era-powers the courts of counties and corporations to purchase two acres of land whereon to erect courthouses, jails, pillories &c. and which is to be found in the revised code of 1794, ch. 67. § 13.* The conveyance is not made to the court of hustings of Petersburg, but to the mayor, aldermen and commonalty of Petersburg, a different body altogether. The act incorporating the town of Petersburg, passed in May 1784 (11 Hen. Stat. at large, p. 382.) authorizes the voters of the town to elect a mayor, recorder, four† aldermen and sixf common councilmen: it erects the freeholders, housekeepers and inhabitants (who are the voters) into a body politic *230 and corporate, by the name of “the mayor, aldermen and commonalty of the town of Petersburg,” who are to have perpetual succession and a common seal. All acts done by the mayor, recorder, aldermen and common council are to be done in common hall, when seven members shall be present, of whom the mayor; recorder or eldest alderman shall be always one. This common hall is a different body from-the court of hustings, although some of those who compose the latter may sit in the former. The court consists of the mayor, recorder and aldermen: the common councilmen form no part of it.
The common hall is obviously the legislative body of the town, as the court of hustings is the judiciary. The powers conferred on the common hall are very extensive; and the jurisdiction of the court well marked out and defined. By the second section it is enacted that the body politic and corporate, and their successors, by the name aforesaid, shall be able and capable in law “ to have, purchase, receive, enjoy, possess and retain, to them and their successors forever, any lands, rents, tenements, hereditaments, of what kind, nature or quality soever; and also to sell, grant, demise, alien or dispose of the same.” It also enacts “ that they and their successors, by the name aforesaid, shall especially have power to rent, erect or repair workhouses, houses of correction, a courthouse, prison, markethouse and hospitals, and other public buildings for the benefit of the said town.”
Here is a' general and unqualified grant of power conferred on this corporation, to purchase and hold lands, and to sell and convey them ; in other words, to have complete dominion over them. This general grant is by no means limited or restricted by the clause giving them power to rent, erect and repair public buildings. That is neither expressed nor intended to be a limitation on the general grant of power. On the contrary, *231 it is an additional gra.nl of power: nor can the especial power to erect public buildings restrain them irom erecting buildings of any kind on land of their own, and over which they have complete dominion, whenever they may deem it necessary to erect them for the benefit of the town.
That the legislature itself construed the charter as granting to the corporate body a general power to purchase land for the use of the town, is also apparent from the subsequent acts of 1787, ch. 81. § 2. (12 Hen. Stat. at large, p. 622.) and 1791, ch. 53. § 1. (13 Id. 295.)
In the view which I have taken of this subject, I do not deem it necessary to enquire whether the court of a county or corporation is iuhibited by the act of 1792 before mentioned, or the act of 1819 (1 Rev. Code of 1819, ch. 71. § 16. p. 250.) from erecting on the public square of two acres, any building, public or private, other than the courthouse, jail, pillory, whipping post and stocks therein specified.
Let us now turn to the deed from the appellant to the appellees, and enquire what is the proper construction to be given to it, bearing in mind the chartered privilege of the corporation to purchase and hold in fee simple any land whatsoever. The grantor, for valuable consideration, bargains and sells to the corporate body in fee simple, “for the use of the said town,” an acre of land by metes and bounds, “ for the purposes hereinafter mentioned.” After describing the piece of land conveyed as that whereon now stand the courthouse and jail, the use and purposes are afterwards mentioned in the following language : “ Which said piece of land is hereby given, granted and conveyed, in consideration of the said courthouse and jail having been built thereupon, and in consideration also that the said courthouse and jail, and the judiciary proceedings of the said town, shall be continued to be kept and held upon the said premises.” The grantor also covenants with the *232 said mayor, aldermen and commonalty and their suc- , • , , , • , cessors, and it is expressed to be the true intent and meaning of the parties, that the said corporate body, “ for the use of said town,” shall quietly and peaceably hold and enjoy the said piece of land, “ so long as the judicial proceedings of the said town shall continue to be held thereupon.” Then follows finally a proviso, that “ in case it shall ever so happen that the juridical proceedings of the said town shall be discontinued to be held and kept upon the said piece or acre of land, and shall be removed, and held and continued permanently at some other place, in such case such piece of land to reinvest in the said Robert Bolling, his heirs and assigns, as though this indenture had never been made.”
Here then is a conveyance in fee for the use of the town, for the purpose of having the courthouse and jail on the lot conveyed, and that the judicial proceedings may be permanently held there; with a covenant for quiet enjoyment so long as the judicial proceedings are held there, and with one only condition annexed, which is, that whenever the judicial proceedings cease to be held there, and are permanently held at some other place, then the lot shall reinvest in the grantor or his heirs.
The terms of the conveyance have been complied with; the courthouse and the jail are on the lot, and the judicial proceedings are still held there; the condition is not broken, and the reinvestiture cannot take place.
But the complaint is that the appellees have applied a portion of the ground to objects inconsistent with the grant: that they have laid it off into building lots, which they have let out to individuals on long leases, and have thereby acquired considerable profit to thé corporation, not intended by the grant. This complaint is, I think, entirely without foundation. There appears to be abundance of room, on the acre of land, both for *233 the new tenements and for the courthouse and jail. The judicial proceedings are carried on there with per-feet convenience, and the buildings erected do not interfere with the full enjoyment of the rights vested in the people of the town by the grant. They do not complain that they are restricted in the full exercise of their rights. Whilst the condition on which the corporation hold the lot is not broken, they hold complete dominion over it, and may use it in any way that they think best for the use of the town. I am of opinion that the decree be affirmed.
Cabell, J.
If the purchase in this case had been made by the corporation court of the town of Petersburg, under the act of assembly empowering the county and corporation courts to purchase lands whereon to erect courthouses and other buildings connected with the administration of justice, I should have been clearly of opinion that the land could not be applied to purposes other than those indicated by the act of assembly. For, as the courts have not a general power to purchase lands, but a special power for particular purposes only, they must of necessity be confined, in their use of the lands, to the purposes for which the authority to purchase was given.
But this purchase was made not by the court, but the corporation of the town of Petersburg, w'hich has a general power to purchase lands, without limitation as to their use, or as to the purposes to which they may be applied. In such a purchase, the expression of one purpose to which the land is to be applied cannot justly be regarded as excluding other purposes, not essentially inconsistent with that which is expressed. If it be the object of the grantor to restrict the use to the purpose declared, he should introduce covenants or stipulations excluding, by express declaration or by necessary legal inference, all other appropriation. This has not been *234 done in this case ; and therefore I am of opinion to affirm the decree.

 1 Rev. Code of J 819, ch. 71. § 1C. p. 250. “ Prom time to time forever hereafter, tlie court of every county and corporation within, this commonwealth shall cause to be erected and kept in repair (or, where the same shall be already built, shall maintain and keep in good repair) within each respective county and corporation, and at the charge of such county or corporation, one good and convenient courthouse of stone, brick or timber, and one common jail and county prison, well secured with iron bars, bolts and locks, and also one pillory, a whipping post, and stocks; and where land shall not be already provided and appropriated for that purpose, such court may purchase two acres whereon to erect the said public buildings, for the use of their county or corporation, and for no other use whatsoever. And to every courthouse already built and established, two acres of the land built upon and adjacent thereto, not having any house, orchard or other immediate convenience thereon, shall he and remain appropriated to such courthouse; and the fee simple thereof is hereby declared to be in the court of the same county, and their successors, to the use of such county as aforesaid; but where a courthouse is already built in any city or town, the land now laid off for the same and the other public buildings shall be judged and held to be sufficient.”

 Note by the judge. The act of October 1787 adds two more aldermen and two more common councilmen.